1

2

3

4              UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   JANE DOE,                          Case No. 24-cv-00859-NW

8                  Plaintiff,

9         v.                           **ORDER GRANTING PLAINTIFF'S
                                       MOTION FOR JUDGMENT
10  LIFE INSURANCE COMPANY OF          PURSUANT TO FED. R. CIV. P. 52;
    NORTH AMERICA,                     DENYING DEFENDANT'S MOTION
                                       FOR JUDGMENT PURSUANT TO
11                 Defendant.          FED. R. CIV. P. 52**

12                                     Re: ECF No. 54, 55

13  **I.      INTRODUCTION**

14          Plaintiff Jane Doe ("Doe" or "Plaintiff") sued Defendant Life Insurance Company of North

15  America, Inc. ("LINA" or "Defendant") for the denial of benefits under her employer's Long

16  Term Income Plan ("the Plan").  LINA administers and insures the Plan, which is covered by the

17  Employee Retirement Income Security Act ("ERISA").  Plaintiff seeks reinstatement of her long-

18  term disability income benefits and judgment on her claim for breach of fiduciary duty.

19          Pursuant to Federal Rule of Civil Procedure 52, each of the parties moves for judgment in

20  its favor on Plaintiff's ERISA claims.  *See* ECF Nos. 54, 55.  Under Rule 52, the Court conducts a

21  bench trial on the record.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999).

22  The Court held the Rule 52 hearing on October 7, 2025.  Having read the papers filed by the

23  parties, carefully considered their arguments and the relevant legal authority, and good cause

24  appearing, the Court GRANTS Doe's motion and DENIES LINA's motion.[1]

25

26  _____

    [1]      The Court issues this decision in narrative form because it allows the Court to more fully
27  explain its reasoning and aids appellate review.  In this decision, any finding of fact that
    constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of
28  law that constitutes a finding of fact is hereby adopted as a finding of fact.

United States District Court
Northern District of California

The following constitutes the Court's Findings of Fact and Conclusions of Law. *See* Fed. R. Civ. P. 52.[2]

## II.    FINDINGS OF FACT[3]

### A.    Plaintiff's Occupation and Disability Policy

Plaintiff is a former employee of Lockheed Martin, where she was a mechanical engineer. AR 1974; AR 1118.[4]  Doe's specific role was as a Dynamics Analyst and a Separation Dynamics Analyst for existing and new, fast-paced hypersonic missile programs, simulating missile ascent and reentry heatshield aeroheating and ablation, and designing thermal protection strategies for internal components.  AR 1974, 1979, 1375.

As part of the claim process, Lockheed completed a Job Requirements Form.  AR 136-38. Plaintiff's job title is listed as Mechanical Engineer, but Lockheed further described Plaintiff's role as "a highly technical aerospace engineering job" that required the ability to perform a variety of duties, often from one task to another without loss of efficiency or composure; perform under stress when confronted with emergencies or unusual situations; perform with demands of precise attainment of set limits, tolerances, or standards; and make generalizations, judgments, or decisions based on subjective or objective criteria such as with the five senses or with factual data. *Id*.  Plaintiff was also required to regularly use ingenuity and creativity to develop technical solutions to complex problems.  AR 1374.

While an employee, Plaintiff enrolled in the Lockheed Martin Long Term Disability Income Plan ("Plan").  AR 007.  The Plan is an "employee welfare benefit plan" as defined at 29 U.S.C. § 1002(1).  AR 2528.  LINA was the insurer and claims administrator for the Plan. AR 2508.  For Class 1 employees such as Plaintiff:

---

[2]    "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a)(1).

[3]    Plaintiff asks the Court to consider evidence outside the record when ruling on the instant motions. Because the Court decides in Plaintiff's favor without reaching the extrinsic evidence, the issue is moot.

[4]    The Court refers to the pages in LINA's claim file, ECF No. 50-3, with the prefix "AR."

the Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform each and every material duty of his or her Regular Occupation[5]; and
2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. unable to perform each and every material duty of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2. unable to earn 80% or more of his or her Indexed Earnings.

AR 463. Proof of continued Disability is required. *Id.* Benefits end when LINA determines an Employee is not Disabled. AR 2485, AR 2519. Coverage ends, in relevant part, when the claimant is no longer in an eligible class or Active Service, *i.e.* not Disabled and does not return to work for the Employer. AR 2453-54, AR 2514.

### B.    Plaintiff's Vaccine and Subsequent Disability

To minimize any potential adverse effects of COVID-19, Plaintiff took the Pfizer vaccine in early 2021. Plaintiff received her first Covid vaccination on March 25, 2021, and noticed chest pain and shortness of breath. AR 1975. After the second vaccination on April 22, 2021, she reported feeling tired and having difficulty concentrating. AR 1977. On May 7, she went to urgent care for fatigue and chest discomfort but denied shortness of breath. AR 1948. Her vital signs, exam, electrocardiogram (ECG), and chest x-ray were normal. AR 1947-53. Her Covid serology test was negative, AR 235, her labs were not concerning, AR 1944-46, AR 1950-53, and no restrictions were indicated. Before getting the vaccines, Plaintiff was in weekly behavioral health therapy, AR 40, and treatment for perimenopause with symptoms of morning fogginess.

---

5    The term "Regular Occupation," though capitalized in the Plan, is not a defined term. *See* AR 463 (amending the Plan by capitalizing Regular Occupation in the definition of Disability/Disabled, among other revisions). Though Plaintiff maintains that the official job title "Mechanical Engineer" fails to "capture the advanced level physics analysis and lead responsibilities of her job," she appears to concede that Mechanical Engineer is her Regular Occupation. AR 832-33 (appeal letter describing the "material duties of [Doe]'s job as a Mechanical Engineer"). LINA explicitly refers to Plaintiff's Regular Occupation as Mechanical Engineer. *See* AR 302.

AR 41; 2444-45.  She was also in physical therapy ("PT") for ankle and shoulder issues.
AR 1954-58.

In the subsequent months, Plaintiff suffered debilitating chronic medical issues, including "profound fatigue," "brain fog," "lack of stamina," "post-exertional malaise," "cognitive decline," "internal vibrations," and "dysautonomic symptoms" including trouble swallowing and deficits in automatic breathing.  AR 1508, 1753-1880; 2057-2059.  These conditions prompted Doe to seek treatment from several different doctors as she searched for relief.  A medical consultant hired by LINA outlined the dozens of appointments that Doe attended and the various doctors' findings from the inception of her disability through September 2022.

**Gina Serraiocco, MD, Integrative Medicine**

On 6/22/21, Gina Serraiocco, MD, Integrative Medicine, describe this 48 year old woman as presenting for a functional medicine perspective. Complaints of long term COVID vaccine side effects included fatigue, tiredness, poor exercise tolerance, difficulty concentrating, chest ache, mucus, and tightness in the lungs. Other complaints included ankle and shoulder pain along with peri menopausal morning fogginess and moderate sleep apnea. The medical record was reviewed and a past history of depressive disorder is noted. The examination was limited and appeared to be normal with no cardiopulmonary or neurological deficits. No cognitive or mental status exam was performed. The physician did not document any functional impairments. It was suggested that the COVID vaccine had resulted in a long COVID like syndrome. The report did not suggest any restrictions.

On 11/3/21, Gina Serraiocco, MD, stated that there had been incremental improvement, but she was not able to function adequately for work and would work with her PCP regarding disability. The examination was unremarkable. The visit did not include a physical functional assessment or any demonstrated impairment.

On 1/20/22, Gina Serraiocco, MD, stated that the claimant should attend a mood program, as she suffers from anxiety and depression as a result of the vaccine sequalae.

Similar visits on 5/3/22, 5/4/22, 4/2/22, 4/20/22, 4/11/22, 3/31/22, 3/29/22, 3/16/22, and 3/4/22, along with earlier visits are reviewed. These visits appear to reiterate her symptoms, and do not include a comprehensive physical examination or documentation of any physical abnormalities. The visits did not include a physical functional assessment or any demonstrated impairment.

On 6/2/22 and 6/6/22, Gina Serraiocco, MD, now listed diagnosis of blood vessel inflammation, dysautonomia, anxiety, and mast cell

activation. No examination abnormalities or studies were documented supporting these new diagnoses.

**Ellen Schneider, MD, 650-853-2984**

On 7/20/21, Ellen Schneider, MD, completed a disability statement and indicated that the claimant had not recovered sufficiently to return to work, as she was unable to think clearly or concentrate with extreme fatigue, brain fog, difficulty concentrating, and excessive sleep. The report did not include any examination. The report did not document any functional impairment or functional limitations.

On 8/24/21, Ellen Schneider, MD, noted that the claimant was concerned about her memory and that she was taking low dose naltrexone. She complained of fatigue and brain fog. The examination was limited, as this appeared to be a video visit. No cognitive or mental status examination was performed. The report did not document any functional impairment or functional limitations.

Follow-up visits are noted on 9/9/21, and 10/14/21. These visits documented the claimant's ongoing complaints with extensions of her disability.

The next visit was on 6/9/22, at which time the claimant had returned to discuss return to work. She was stated to still be suffering extreme fatigue and brain fog making return to work now impossible. She was working with a psychiatrist. This appeared to be a video visit with a limited normal examination. The report did not document any functional impairment or functional limitations.

**OTHER PROVIDERS**

**Elizabeth Roman, PA, PCP- 650-853-2984**

On 6/24/21, Elizabeth Roman, PA, performed a video visit with the claimant related to disability from vaccine side effects. She had presented to apply for short term disability related to fatigue and post exertional malaise that worsened after the second vaccine. She was also seeing specialists, and her primary care physician for management of these complaints. She was described as being in no distress and the limited exam did not suggest any respiratory or cognitive impairment. No restrictions are documented. A 6/25/21 report did not document any functional impairment or functional limitations of ADLs. A return to work form was left blank. The claimant was to be referred.

On 12/30/21, a **Specialist Review**[6] concluded that [Doe] was not functionally limited. The report noted: The claimant had been followed for chronic fatigue with no specific diagnostic findings for the cause. The claimant's clinical findings did not demonstrate any reproducible findings of range of motion loss, motor weakness, or gait dysfunction. No pertinent side effects with medications were detailed.

---

[6]    The specialist review was conducted by Dr. Ziad Fadul, MD (Family Medicine), a consultant hired by LINA to provide an initial review of Doe's claim.

There were no other pertinent findings noted from an internal medicine perspective that would support the claimant continued to be functionally impaired as of June of 2021 that would require formal work restrictions and/or limitations or periods of disability.

On 1/19/22, a letter from her **marriage therapist** was reviewed and supported her receiving an assessment for anxiety and depression.

**R. Yogendra, MD,** submitted a report on 4/8/22 outlining the claimant's symptoms and describing an experimental approach for her management.

On 8/11/22, **Bruce Patterson, MD,** submitted a letter indicating that he had been seeing the claimant through the chronic COVID treatment Center for symptoms post vaccination. She was stated to meet the criteria for post vaccination long haulers with fatigue, neurocognitive dysfunction and malaise. Her treatment has mildly improved her condition, but she cannot fulfill the rigors of her job, as her cognitive functions had not improved greatly. The physician's letter was not accompanied by a history and physical examination.

On 3/29/22, she was seen by **Leigh-Anne Lehrman, PA,** with a diagnosis of dysautonomia, weakness and new complaints of a vibration in her upper chest. A neurological consultation had demonstrated a normal EMG and an MRI in 2019 had been normal. She had gone to the emergency room the day before after waking up with numbness in both legs and her torso, feeling totally disconnected with her body. There is no documentation of a definitive diagnosis.

On 3/3/22, **Amy Lee, MD, Neurology,** saw the claimant for evaluation of dysautonomia. Symptoms of vibratory chest discomfort from her chest to her legs along with brain fog and fatigue are noted. Her symptoms were not felt to sound classically neuropathic but further testing was considered. The examination had revealed normal vital signs and a normal general exam. Her neurological exam was normal. The report did not document any functional impairment or functional limitations. No restrictions were documented. An EMG was normal.

AR 1991-93.

Across a panoply of appointments over more than a year, Doe consistently reported symptoms of severe fatigue and brain fog.

### C.    Plaintiff's Communications With LINA

On or about June 15, 2021, Plaintiff submitted a claim for short term disability income benefits to Sedgwick, the claims administrator for Lockheed's Short Term Disability Plan. AR 113.  Sedgwick accepted and paid benefits for the entire period—through December 2021. AR 114.  LINA, as the long-term disability insurer, received a copy of the Sedgwick claims file, which included Plaintiff's treating-physician forms and medical records.  AR 022-119.

United States District Court
Northern District of California

On October 28, 2021, LINA acknowledged receipt of Plaintiff's claim for long term disability benefits, AR 008, and requested Plaintiff complete and return various forms, including a Disability Questionnaire and authorizations. AR 014. On February 16, 2022, nearly four months after receipt of Doe's claim, LINA denied Plaintiff's claim for benefits. In that interim time, LINA had an outside doctor provide a specialist review and report. AR 271. Dr. Zaid Fadul's report, dated December 30, 2021, found that, though "[t]he claimant has reported significant fatigue, . . . no corelating clinical findings supportive of an impairment are documented." *Id.* Because "[t]he claimant's clinical findings did not demonstrate any reproducible findings of range of motion loss, motor weakness, or gait dysfunction," Dr. Zaid found that Doe was not functionally impaired as of June 2021.

LINA's denial letter did not mention Dr. Fadul's review, but it articulated similar reasons for denying Doe's claim. LINA made the following observations and conclusions:

> During a December 2, 2021 phone discussion regarding your disability; you explained that you received two doses of the Pfizer vaccine and began to experience some adverse effects after the initial dose, but became very ill after the second dose resulted in you experiencing extreme fatigue and brain fog. You explained that it felt like chronic fatigue, but that you had recently began to see some small improvements such as your ability to attend to basic things in your everyday life such as keeping up on bills and mail; however, you were still unable to exercise, had to be careful to not over exert yourself due to concerns about your energy and continued to have difficulty composing e-mails and texts. . . .
>
> [In] [s]ubsequent follow up visits[,] Dr. Schneider and Dr. Serraiocco note you began to experience chronic fatigue and were very concerned about your memory. . . You reported that exercise wiped out your energy, you had very few memories from May and June and you were having a hard time prioritizing things. You noted that you are sleeping 9-12 hours per night and were feeling slightly better than your September 9, 2021 visit; however, you still had difficulty concentrating when reading and could only tolerate limited noises and light. . . The most recent evaluation available . . . indicates you had been compliant with the treatment recommendations given and noticed incremental improvement; however, you were still unable to function. . . .
>
> While documentation consistently notes reports of fatigue and difficulty concentrating; the clinical findings do not demonstrate any deficits in range of motion, motor weakness or gait dysfunction and there are no pertinent medication side effects indicated. After review, examinations were largely unremarkable. . . . As such, the information we gathered does not support functional deficits that necessitate work

United States District Court
Northern District of California

> restrictions that would preclude you from performing the duties of your Regular Occupation as a Mechanical Engineer which is considered a sedentary occupation.

AR 1068. LINA's denial letter advised that Plaintiff had 180 days to request a review (appeal) of the denial. *Id.*

Plaintiff timely appealed the denial of her benefits on August 12, 2022. AR 829. In support of her appeal, Plaintiff sent voluminous up-to-date medical records, lab reports, testing results, letters from her treating doctors, her doctors' curriculum vitae or links thereto, and articles. AR 1099-1118. She also submitted employment records from Lockheed, performance evaluations and job descriptions. AR 1119-1958. LINA acknowledged receipt of the appeal on August 26, 2022. AR 1972.

On October 12, 2022, sixty-one days after the appeal was submitted, LINA sent a letter stating Plaintiff needed to undergo a Neuropsychological Independent Medical Evaluation ("IME") before a final decision could be made. AR 2003. LINA specifically stated that the IME "was necessary to decide [Doe]'s appeal" as it would "help us clarify [Doe's] functional abilities." The IME was of such importance to LINA that it unilaterally "tolled" its deadline to respond to Plaintiff's appeal until it received the examination report. *Id.* Doe began the IME on the date scheduled (November 18, 2022), but she had to stop half-way through the test because she lacked the stamina to continue. While Plaintiff was in the process of rescheduling, LINA decided on December 9, 2022, that the IME was no longer warranted. AR 2012.

During these months, LINA also sent Doe's medical records to two retained medical reviewers, Dr. Joseph Palermo, D.O. (Internal Medicine) and Dr. Reginald Givens, M.D. (Psychiatry). AR 1981-1990. In a report dated September 22, 2022, Dr. Palermo opined that Doe was not "physically functionally limited from 6/12/2021 and continuing related to chronic fatigue or Covid-19." AR 1995. He went on to explain that he did "not opine regarding a diagnosis of depression, as this is not my specialty." *Id.* Dr. Given's submitted a report dated October 3, 2022. AR 1997-2002. He found that Doe *was* functionally disabled as a result of her mental health from June 12, 2021 through April 12, 2022, the last date for which Dr. Givens had records. *Id.*

1    The records Dr. Givens reviewed included those from an intensive outpatient program that

2  Doe attended from January 16, 2022 through April 12, 2022 after she experienced difficulties with

3  her mental health brought on by her vaccine injury.  AR 1532-1753.  Doe reported physical

4  symptoms of her vaccine injury through the very last day of her program.  *See, e.g.*, AR 1601

5  (describing symptoms of "fatigue/energy loss," "significant difficulty concentration [sic] or with

6  decision making: [r]equing assistance to complete tasks.").

7    On December 12, 2022—122 days after Plaintiff appealed the denial—LINA sent a letter

8  upholding the denial of benefits, AR 2016, concluding that "functional impairment from a

9  physical perspective is not supported."  AR 2018.  LINA also concluded, however, that from a

10  ***psychiatric*** perspective, functional impairment was supported from June 12, 2021, through April

11  12, 2022; and benefits would be payable for that time period only.  AR 2018.  LINA specifically

12  stated that "[n]o work requiring sustained concentration and short-term memory and social

13  interaction is supported during" that time period.  *Id.*

14    Drs. Palermo and Givens reports were enclosed with the letter.  AR 2020, AR 2026.

15  LINA's letter granted Doe until December 27, 2022, (14 days) to provide a response.  AR 2018.

16  At Plaintiff's request, LINA extended Plaintiff's deadline to provide additional information to

17  January 27, 2023.  AR 2034.  Plaintiff timely submitted these supplemental materials on the

18  agreed deadline.  Among the new documents was a January 23, 2023 letter from Dr. Serraiocco.

19    Despite the extension, LINA issued a letter upholding its previous decision on January 27,

20  2023, because "as of the date of this letter, [LINA] ha[d] not received any response from [Doe] or

21  request for additional time."  AR 2047.  The letter explicitly stated that Doe had "exhausted all

22  administrative levels of appeal and no further appeals will be considered."  AR 2050.  Counsel for

23  Doe promptly wrote to LINA challenging the appeal decision, noting that the decision itself

24  "acknowledge[d] [that LINA] gave us until January 27, 2023, to provide additional information in

25  support of [Doe]'s claim, yet you sent out your letter before the day had ended."  AR 2147.  It

26  does not appear that LINA ever responded directly to Doe's February 6, 2023, letter in writing, but

27  later communications indicate that LINA re-opened Doe's claim.

28    The January 23, 2023, letter from Dr. Serraiocco included the following representations:

United States District Court
Northern District of California

> Over the past 18 medical visits, at each visit, I have observed [Doe] to lack the functional ability to work in any capacity. . . . In her disabled state due to the likely vaccine injury, she has:
> - Lack of stamina to perform multiple functions in a day
> - Difficulty concentrating
> - Difficulty processing
> - Difficulty analyzing and drawing conclusions
> - Difficulty communicating with a team on complex projects
>
> *I attest that this type of limited functional and cognitive capacity has been observed during each medical visit over the past year and a half.* . . . I'd like to briefly note that in my opinion, [Doe]'s primary condition is physical, and not emotional. Covid vaccine injury can cause physical pain, profound fatigue, neurological and cognitive problems that often times lead to severe depression, lack of coping and breakdown. . . .

AR 2157-59 (emphasis in original). Dr. Serraiocco finished her letter by "implor[ing]" LINA to reconsider its decision. AR 2159. In her opinion, [t]o deny that [Doe] has a disabling functional and cognitive impairment is a form of medical and insurance gas-lighting." (*Id.*)

Sometime after January 27, 2023, LINA sent Dr. Serraiocco's January 27, 2023, letter to Drs. Palermo and Givens for review.[7] Dr. Palermo did not change his previous opinion that Doe was not physically disabled. He noted that,

> [i]t does appear that Dr. Serraiocco has concerns about this claimant, but in my opinion, the original documentation and a subsequent letter do not document any examination or functional assessment, or any objective testing supporting the claimant's disability. My opinion is unchanged.

AR 2250.

Dr. Givens, however, did change his guidance. As he explained in his follow up report:

> Per information of Dr. Serraiocco, it is noted that this provider reported observing the claimant to lack functional ability to work in any capacity, specifically noting problems with fatigue, struggling with activities of daily living, and having her family and friends check her mail and help her keep everything straight, and noted that the claimant is frustrated and has limited stimulation tolerance. Also reported difficulty following complex instructions and stated the

---

[7]    The parties dispute whether LINA provided Drs. Givens and Palermo with any materials from Doe's January 27, 2023 submission to LINA beyond the letter from Dr. Serraiocco. While Dr. Palermo's report from March 1, 2023, directly cited some of the other documents from Doe's January 27, 2023 production, AR 2245-2251, Dr. Given's additional report does not mention any documents beyond Dr. Serraiocco's letter. AR 2237. Further, LINA's third appeal decision lists Dr. Serraiocco's letter as the only additional information reviewed after January 27, 2023. AR 2249.

United States District Court
Northern District of California

> claimant did not have the cognitive ability or the energy to sustain any aspect of a typical tech job and specifically documented that there was difficulty concentrating, difficulty processing, analyzing and drawing conclusions, and difficulty communicating with a team on complex projects. Also stated that the claimant was observed to struggle with keeping notes straight and taking notes during the visits to compensate for cognitive decline and getting tearful when frustrated about her lack of progress and inability to return to work, and also noted that the claimant's depression and breakdown were caused by the physical and mental toll of her injuries and that she had received intensive therapy at El Camino Hospital.

AR 2242. Dr. Givens specifically noted that Doe drew "upon her mental support tools as she navigates *the physical illness.* AR 2241 (emphasis added). Despite the above recitation, Dr. Givens recommended LINA extend disability only through "the date of February 14, 2023, which is four weeks from the date of the last documented visit." AR 2242. Dr. Givens did not provide any reasoning for extending benefits through the four weeks beyond Doe's last visit with her doctor. His description makes no reference to any timeline for which Dr. Givens opined Doe's symptoms would resolve, and therefore when Doe could expect to return to her work as a Mechanical Engineer for Lockheed.

LINA adopted Dr. Givens' recommendation and extended benefits through February 14, 2023, but no further. Specifically, LINA found that Doe was not (and in fact, had never been) physically disabled. AR 2255. LINA did find, however, that "[f]rom a psychiatric perspective, . . . prior recommendations are changed and Doe's 'no work' restriction is supported through February 14, 2023 which is four weeks from the date of the last documented visit." *Id.* In so finding, LINA adopted Dr. Givens' summary of Dr. Serraiocco's letter nearly word-for-word, including the portion that explained that Doe

> has difficulty following complex instructions and *did not have the cognitive ability or the energy to sustain any aspect of a typical tech job* and specifically documented that there was difficulty concentrating, difficulty processing, analyzing and drawing conclusions, and difficulty communicating with a team on complex projects.

*Id.* (emphasis added). According to LINA, it was "[b]ased on this additional information" that LINA changed its recommendation and extended benefits. LINA did not explain why it credited Dr. Serraiocco's opinion that Doe lacked the "cognitive ability or the energy to sustain any aspect

11

of a typical tech job" in deciding that Doe was disabled from a "psychiatric perspective," nor why that reasoning did not extend beyond February 14, 2023.

## III.    CONCLUSIONS OF LAW

### A.    Standard of Review

This action is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See, Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Parrino v. FHP, Inc.*, 146 F.3d 699, 703-04 (9th Cir. 1998). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Unless the parties have contracted otherwise, district courts review a plan administrator's denial of benefits under a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties agree that the *de novo* standard of review applies.[8]

On *de novo* review, an ERISA administrator's decision receives no deference. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295–1296 (9th Cir. 2010). Instead, the court performs an "independent and thorough inspection" of the matter. *Silver v. Exec. Car Leasing Long–Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006). It then "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014). The Court's review "can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." *Id.* (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003)).

The plan participant bears the burden of proving her entitlement to benefits. *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1186 (9th Cir. 2022). Because the burden rests with the claimant, "the [C]ourt must examine whether the participant has established, by a

---

[8]    The other standard of review is abuse of discretion, a comparatively more stringent standard (the application of which in this instance would be highly deferential to LINA). LINA's contention in its brief that "Plaintiff improperly applies the abuse of discretion standard of review" in its motion is therefore nonsensical. The Court can only assume that LINA took issue with Plaintiff's alleged attempts to shift the burden of proving (or disproving) liability onto LINA. ECF No. 59 at 19. Regardless, the Court will not heed LINA's insistence that all of Plaintiff's abuse of discretion cases—again, cases that provide a better standard for LINA—are therefore distinguishable and should be disregarded.

preponderance of the evidence, that the record supports the conclusion that [s]he is entitled to benefits under the policy." *Louis v. Hartford Life & Accident Ins. Co.*, No. C19-56 MJP, 2020 WL 39145, at *7 (W.D. Wash. Jan. 3, 2020) (citing *Muniz*, 623 F.3d at 1294, 1296). "The mere existence of an impairment is insufficient proof of a disability. A claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations and internal quotation marks omitted).

Given this standard, reasoned assessments of what Doe can and cannot do are given greater weight than mere statements of medical diagnoses. *See, e.g., Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015); *Holifield v. UNUM Life Ins. Co. of Am.*, 640 F. Supp. 2d 1224, 1237-38 (C.D. Cal. 2009). Descriptions of symptomology are likewise more helpful in determining a claimant's functional capacity than are mere diagnoses. *See Muniz*, 623 F.3d at 1296 (recognizing the relevant issue before the district court on *de novo* review was whether the evidence could confirm the plaintiff's "symptoms rose to the level of total disability" such that she was "unable to perform" essential job duties (internal quotation marks omitted)).

### B. Merits

According to LINA, "Plaintiff has not established in this Administrative Record that she was unable to perform her occupation beyond February 14, 2023 due to a Covid vaccine injury or a psychiatric condition." ECF No. 55 at 19. The Court disagrees. In reviewing the record, the Court finds that (1) Plaintiff's occupation, though sedentary, required significant cognitive function that her disability made impossible; (2) Plaintiff's subjective complaints of various debilitating symptoms are credible and cannot be discounted under the terms of the Plan; and (3) the opinions of Plaintiff's treating doctors (which universally align with Plaintiff's claim of disability) are entitled to more deference than the opinions of LINA's consultants (who conducted only paper reviews of Plaintiff's records). As a result, the Court further finds that Plaintiff has met her "burden of showing, by a preponderance of the evidence, that she was disabled under the terms of the plan during the claim period." *See Eisner v. The Prudential Ins. Co. of Am.*, 10 F. Supp. 3d 1104, 1114 (N.D. Cal. 2014).

1.       **The material duties of Plaintiff's occupation require high-level cognitive function**

Given the definition of Disabled in Plaintiff's policy—*i.e.*, that she is unable to perform "each and every material duty" of her Regular Occupation—the most salient issues in resolving Plaintiff's claim are identifying (1) the material duties of Plaintiff's occupation, and (2) whether Plaintiff could perform these duties despite her injury.

The parties do not agree on the material duties of a Mechanical Engineer.  According to Plaintiff, her role requires high-level cognitive function to perform and solve complex technical matters, calculations, and analyses. AR 136-138, AR 1975; AR 1374.  Though not explicit, LINA insinuates that Plaintiff's duties are merely physical, emphasizing that Plaintiff's occupation is sedentary without mentioning any other aspects of the job.  *See* AR 303, AR 2016, AR 2047, AR 2248 (referring only to the "sedentary" nature of Plaintiff's job).  At its most charitable, LINA concedes only that Plaintiff's job required her to "communicate clearly, attend virtual calls up to an hour, and work on a computer for 6 hours or more."  ECF No. 55 at 3-4.  LINA's notion of Plaintiff's role as a Mechanical Engineer who works on missile projects is inexplicably reductive; a Mechanical Engineer must do more than simply sit at a desk and clearly communicate during calls.  According to the Dictionary of Occupational Titles (a source directly cited by LINA in its denial letters), a Mechanical Engineer "[c]onducts analytical studies on engineering proposals to develop design for products . . . utilizing and applying engineering principles, research data, and proposed product specifications"; "[a]nalyzes data to determine feasibility of product proposal"; and "[e]valuates engineering test results for possible application to development of system or other uses."  *See* AR 140.  Without question, these tasks require consistent concentration and stamina to conduct complicated analyses.

LINA's view of Plaintiff's material duties likewise does not comport with similar cases in this District.  In *Teicher v. Regence Health and Life Ins. Co*., for example, the court found claimant-attorney was unable to perform each and every material duty of his occupation because his cognitive impairment made him unfit to "integrate, to synthesize and ultimately to put to use vast amounts of detailed information in order to represent his clients adequately and to advance his

clients' interests in negotiations or before a court."  562 F.Supp.2d 1128, 1140 (D. Or. 2008).  The

court came to this conclusion even though it noted that claimant's neuropsych testing only showed

"mild" deficits.  *Id.*  The court in *Brown v. Unum Life Ins. Co. of Am.* came to a similar conclusion

when it found the insurer erred by repeatedly emphasizing "[p]laintiff's physical abilities without

considering the stressful, demanding nature of [p]laintiff's usual high-level executive occupation."

356 F. Supp. 3d 949, 968 (C.D. Cal. 2019).  LINA made the same mistake as the defendant in

*Brown*: the insurer "fail[ed] to recognize the non-physical demands of Plaintiff's usual occupation

in terminating [p]laintiff's benefits."  *Id.*

Accordingly, because the material duties of Plaintiff's occupation are primarily cognitive,

Plaintiff is disabled if she demonstrates sufficient cognitive impairment.

### 2.    Plaintiff's subjective complaints are credible

As the Court previously noted, it is Plaintiff's burden to prove by a preponderance of the

evidence that her disability precluded her from performing the materials duties of her job.  LINA

argues that Plaintiff's failure to provide ***objective*** evidence of her disability dooms her claim, but

LINA misstates the importance of objective tests.  The Ninth Circuit has held that "conditioning

an award on the existence of evidence that cannot exist is arbitrary and capricious." *Salomaa v.*

*Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011).  LINA does not (and likely

cannot, given the scientific literature the Court has reviewed within the record) argue that

Plaintiff's ailment itself is illegitimate or that her injury lends itself to objective testing that

Plaintiff has failed to provide.[9]  Plaintiff is disabled—and therefore is entitled to long-term

---

[9]     In its motion, LINA argues that objective tests for Plaintiff's condition exist in the form of
a Neuropsychological Independent Medical Evaluation (IME). *See* ECF No. 55 at 21.  The Court
disagrees, but even so, LINA elected not to have Plaintiff complete her IME.  The Court will not
permit LINA to now argue that such evidence is indispensable.
        LINA, like all ERISA administrators, has a fiduciary duty to conduct an adequate
investigation when considering a claim for benefits, it is the administrator's duty to ask for such a
test "[i]f the administrator 'believes more information is needed to make a reasoned decision.'"
*Cady v. Hartford Life & Accidental Ins. Co.,* 930 F.Supp.2d 1216, 1226 (D. Idaho 2013) (citing
*Booton v. Lockheed Med. Ben. Plan,* 110 F.3d 1461, 1463 (9th Cir. 1997).  LINA implicitly
acknowledged this responsibility when it initially insisted that Doe participate in an IME, even
though it later recanted that decree. *See supra* § II.C.  LINA may not now decry the lack of an
IME when its absence is directly attributable to LINA's choices, nor may it place the blame on
Doe.

United States District Court
Northern District of California

disability benefits—so long as she demonstrates that disability in some manner.  As noted in scores of cases, non-objective evidence *can* give rise to a proper claim for disability so long as the subjective reports of impairment are not the *sole* evidence of disability.

Plaintiff cited more than just her own subjective reports in her communications with LINA.  Plaintiff's doctors provided records that demonstrated their personal observations of Plaintiff's disabling symptoms.  *See* AR 2060 (Dr. Schneider wrote that "[w]atching [Doe] struggle in my office over the course of this past year with chronic exhaustion and brain fog convinces me that she is not able to perform these tasks."); AR 2152 (reflecting Dr. Serriaocco's "attest[ation]" that Doe's "limited functional and cognitive capacity has been observed during <u>each</u> medical visit over the past year and a half.").  At all points, witnesses and medical staff sustained Doe's verifiable claims: though previously an independent woman, Plaintiff required her sister's help for months merely to perform the everyday tasks of living.  AR 1112-13; AR 2061-62.  Doe began to take notes at her doctors' appointments because her memory could no longer retain so much information at one time.  *Id.*  She consistently attempted to push herself—for example, to go on a walk or read a book—and she then felt the detriment those decisions had to her health in the days that followed.  AR 1112.  These are concrete indicators of Plaintiff's condition.

Considered alongside Plaintiff's credibly self-reported symptoms of fatigue, cognitive impairment, and brain fog, Plaintiff has met her burden and demonstrated that she was disabled.  While LINA was "under no obligation to accept [Plaintiff's subjective complaints] at face value," *Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009), *aff'd,* 409 F. App'x 99 (9th Cir. 2010), it also could not ignore Plaintiff's self-reported symptoms if that reporting was credible, *see Shaw*, 144 F. Supp. 3d at 1128; *Veronica L. v. Metro. Life Ins. Co.*, 647 F. Supp. 3d 1028, 1040-44 (D. Or. 2022).  "[I]t is unreasonable to reject 'a claimant's self-reported evidence where the plan administrator has no basis for believing it is unreliable, and where the ERISA plan does not limit proof to objective evidence.'"  *Shaw*, 144 F. Supp. 3d at 1128) (citation omitted).

The Ninth Circuit case *Salomaa* controls.  There, the Court found that "[m]any medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established until autopsy.  In neither case can a disability insurer condition coverage on proof by objective indicators such as blood tests where the condition is recognized yet no such proof is possible."  642 F.3d at 678; *see also Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 769 (7th Cir. 2010) (noting that for conditions such as fibromyalgia, the court has "rejected as arbitrary an administrator's requirement that a claimant prove her condition with objective data where no definitive objective test exists for the condition or its severity").  While LINA distinguishes the *facts* of *Salomaa*, it fails to engage with the larger holding, namely that a disability insurer cannot require exclusively objective evidence where such evidence is impossible to obtain. *See* ECF No. 59 at 19.  And it certainly may not do so where, as here, the terms of the Plan do not specifically require "objective" medical evidence as proof of disability.  *Shaw*, 144 F. Supp. 3d at 1128.

### 3.    The opinions of Plaintiff's treating doctors are entitled to deference

The Court finds that the statements of Doe's treatment providers are reliable evidence of her disability.  The weight assigned to a physician's opinion will vary according to various factors, including "(1) the extent of the patient's treatment history, (2) the doctor's specialization or lack thereof, and (3) how much detail the doctor provides supporting his or her conclusions."  *Shaw*, 144 F. Supp. 3d at 1129.  "[T]he more detail a physician provides concerning the bases for his or her diagnosis and opinion, the more weight his or her conclusions are afforded."  *Id.* at 1130-31.  In other words, "[a] physician's opinion is more credible when supported by medical and vocational evidence of contemporaneous functional limitations."  *Biggar v. Prudential Ins. Co. of Am.*, 274 F. Supp. 3d 954, 968 (N.D. Cal. 2017) (citation omitted).  Courts "have held it unreasonable to reject Plaintiff's treating/examining physician's notes of Plaintiff's self-reporting and subjective observations, or other assertedly 'subjective' evidence, where, as here, . . . the applicable Plan does not restrict the type of evidence that may be used to demonstrate disability."  *Shaw*, 144 F. Supp. 3d at 1128 (citation omitted).

LINA's insistence that Plaintiff merely told "Dr. Schneider and Dr. Serraiocco she could not work due to fatigue and brain fog from the vaccinations . . . and they adopted her reports" misstates the record.  ECF No. 55 at 20.  Plaintiff, of course, *did* tell her doctors of her symptoms, but that was not all her doctors relied upon when deciding Plaintiff was disabled.  As discussed above, both doctors explained that they had *personally* observed many of the symptoms of which Plaintiff complained.  *See, e.g.*, AR 2060 (Dr. Schneider: "Watching [Doe] struggle in my office over the course of this past year with chronic exhaustion and brain fog convinces me that she" is disabled).  They explained that their own experience informed their opinions that Plaintiff was credible and honest about her disability.  *See, e.g.*, AR 1104 (Dr. Serraiocco: "Having practiced for 20 years in medicine, I have seen and taken care of malingerers and [Doe] does not appear to be one. [Doe] appears clearly desperate to get her life back."); AR 1111 (Dr. Schneider: "At no time during [Doe's] illness have I felt that she was malingering.").  Notably, both physicians were clear and consistent in their opinions that Doe was unable to perform the obligations of her occupation.

Regardless, the fact that Plaintiff's doctors relied on Plaintiff's own reports of her symptoms as part of their opinions does not render those opinions meritless.  "In the context of a condition, such as plaintiff's, characterized by disabling pain and fatigue, a physician invariably relies on a patient's descriptions of his or her condition and other types of subjective information in making a diagnosis and in assessing a patient's limitations." *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698, 711 (C.D. Cal. 2020) (citing *Salomaa*, 642 F.3d at 678).

LINA nevertheless mostly ignored these opinions.  Instead of relying on the doctors that directly interacted with Doe, LINA relied on the opinion of three doctors (Drs. Fadul, Palermo, and Givens) who only examined Doe's medical files.  While "ERISA does not require plan administrators to accord special deference to the opinions of treating physicians[,]" plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  LINA's failure to accord any weight to Dr. Serraiocco's opinion is especially egregious

United States District Court
Northern District of California

because she had experience "treat[ing] approximately 40 vaccine injured patients," affording her expertise far beyond that of LINA's doctors.  *See* AR 1103.

Accordingly, the Court finds Dr. Serraiocco's eighteen meetings with Doe give her better insight into Doe's actual condition than the paper review conducted by LINA's consultants.  *See Salomaa*, 642 F.3d at 676 (finding medical opinions rendered following in-person examination more persuasive than contrary opinions from an administrator's paper-only review); *Bunger v. Unum Life Ins. Co. of Am.*, 299 F. Supp. 3d 1145, 1160 (W.D. Wash. 2018) (noting that the plaintiff's "claim also finds support in the evidence from every doctor who personally examined him"); *Nagy v. Grp. Long Term Disability Plan for Emps. of Oracle Am., Inc.*, 183 F.Supp.3d 1015, 1031 (N.D. Cal. 2016), *aff'd*, 739 F. App'x 366 (9th Cir. 2018) ("[E]ach of the examiners based his or her conclusions upon a review of [plaintiff's] medical records . . . . Accordingly, their reports lack the level of credibility normally attributed to physicians who have personally observed a patient.").

Doe consulted numerous doctors across specialties and disciplines, and not one suggested that Plaintiff was malingering.  The Court also finds it noteworthy that "the only people to question whether [plaintiff's] reported symptoms were real—were also the only people to not evaluate [her] in person."  *Hamid v. Metro. Life Ins. Co.*, 517 F. Supp. 3d 903, 917 (N.D. Cal. 2021).  "[A]s compared to physicians who conduct only paper reviews, treating physicians are far better positioned to assess a claimant's credibility, and 'one would expect any doubts as to whether [Plaintiff] in fact suffered the pain he alleged . . . would be reflected in the medical records.'"  *Id.* (quoting *Shaikh v. Aetna Life Ins. Co.*, 445 F. Supp. 3d 1, 6 (N.D. Cal. 2020)).

At bottom, LINA's argument is that Plaintiff's treating physicians, her sister, and Doe herself did not credibly report Doe's condition.  But LINA offers no support for this argument.  Instead, it makes unreasonable inferences and concludes that Plaintiff's failure to provide sufficient objective proof of disability forecloses the possibility that Plaintiff may be unable to perform the material obligations of her highly technical profession as a Mechanical Engineer.  The Court finds that the more reasonable inference is that the reports by Doe's treating physicians are valid and credible measures—not only of Doe's medical condition but also of her ability to work.

1    *See Przybyla v. Prudential Ins. Co. of Am.*, No. 3:24-CV-01090-JSC, 2025 WL 28446, at *10

2    (N.D. Cal. Jan. 3, 2025)

3                                                    * * *

4         Doe cannot perform "each and every material duty" required of a Mechanical Engineer.

5    Though her ailment is not supported by substantial objective evidence, her own reports of her

6    symptoms coupled with the opinions of her doctors are enough to meet her burden.  In sum,

7    Plaintiff is disabled under the terms of the Plan and entitled to reinstatement of her long-term

8    benefits.

9    **IV.    REMAND**

10        Considering the above findings, the Court orders retroactive reinstatement of Plaintiff's

11    "regular occupation" benefits from the time they were terminated to the time that the "regular

12    occupation" benefits would have expired.  *Rude v. Intel Corp. Long Term Disability Ben. Plan*,

13    622 F. App'x 641, 642 (9th Cir. 2015) ("The benefits to be awarded shall be those for the six

14    months of long term disability remaining in [claimant's] 'own occupation' period."); *see also*

15    *Pannebecker v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008); *Grosz-*

16    *Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001).  Doe is entitled to

17    judgment that she is entitled to past-due benefits, namely those benefits LINA did not payout from

18    February 15, 2023 to December 13, 2023.

19        Because LINA denied Plaintiff's claim under the "Regular Occupation" definition of

20    disability, it did not evaluate whether Plaintiff was disabled under the "any occupation" definition.

21    "Clearly established Ninth Circuit precedent holds that determinations of entitlement to ERISA-

22    governed benefits are to be made in the first instance by the claim administrator, not by a court

23    sitting in review thereof."  *Hantakas v. Metro. Life Ins. Co.*, No. 214CV00235TLNKJN, 2016 WL

24    374562, at *6 (E.D. Cal. Feb. 1, 2016); *see also Taft v. Equitable Life Ass. Soc'y*, 9 F.3d 1469,

25    1472 (9th Cir. 1993); *see also Saffle v. Sierra Pac. Power Co. Bargaining Unit LTD Income Plan*,

26    85 F.3d 455, 460 (9th Cir. 1996) (holding it was error for the district court to order payments

27    beyond the initial 24-month disability period where the standard for determining disability

28    changed after the 24-month mark).  Accordingly, the Court finds that remand is appropriate in

United States District Court
Northern District of California

order for LINA to decide in the first instance whether Plaintiff is Disabled under the "any occupation" standard.

Finally, because Plaintiff succeeds on her claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(3), the Court does not reach Plaintiff's claims for breach of fiduciary duty under § 1132(a)(3). "Because Plaintiff's 'claim under § 1132(a)(1)(B) . . . afford[ed] adequate relief" for [her] injury, "relief is not available [to her] under § 1132(a)(3).'" *Dan C. v. Directors Guild of Am. - Producer Health Plan*, No. 24-3203, 2025 WL 1554927, at *3 (9th Cir. June 2, 2025) (quoting *Castillo v. Metro. Life Ins. Co*., 970 F.3d 1224, 1229 (9th Cir. 2020)); *see also Biggar*, 274 F.Supp.3d at 972 n.15 (duplicate claim under (a)(3) not allowed where there is an adequate remedy under (a)(1)(B)). To the extent Plaintiff brings claims for attorneys' fees under § 1132(a)(3), those fees are not available under that provision. *Benson v Life Ins. Co. of N. Am.,* 725 Fed. Appx. 579, 580 (9th Cir. 2018) (pre-litigation attorney's fees in connection with administrative appeals of benefits decision not "appropriate equitable relief" under (a)(3)).

## V.    CONCLUSION

For the foregoing reasons, the Court finds in favor of Plaintiff and against Defendant LINA. The Court:

1. DECLARES that LINA violated the terms of the Plan by denying Plaintiff's claim for long term disability benefits;

2. ORDERS LINA and the Plan to pay Plaintiff's long term disability benefits owed under the terms of the Plan from February 14, 2023, through December 13, 2023; and

3. REMANDS to LINA to determine whether Plaintiff met the Plan's definition of disability under the "any occupation" provision.

The parties are ORDERED to meet and confer on any remaining issues. If the parties can agree on the remaining issues, Plaintiff must submit a Proposed Judgment within twenty-one (21) days of this order.

If the parties require court intervention to resolve any remaining issues, the parties shall submit a Joint Report within twenty-one (21) days of the issuance of this order, explaining the nature of their remaining disputes and proposing an appropriate schedule for resolving them.

**IT IS SO ORDERED.**

Dated: January 16, 2026

Noël Wise
United States District Judge